STURGIS, Chief Judge
(dissenting).
Claimant, George L. Boyd, an employee of Joe Hubbard Hardware, Inc., borrowed employer’s four-foot stepladder to perform personal work at his home, unconnected with the employer’s business.
Otis C. McDaniel, employer’s manager, testified that during work hours he instructed claimant to go home, pick up the ladder and return it to the store, and that he gave him no other instructions.
The only other person remotely connected with the transaction was one Joe Hubbard, and the total evidence regarding his participation is contained in the following question and answer in the course of claimant’s testimony:
“Q. Now, if you had not thought of the hammer you could have put the ladder back and gone back to the store? A. I left there by Mr. Hubbard. He was sending me home for the ladder and he didn’t know how long he would need it and said to put everything in order and come on back.” (Emphasis supplied.)
It was not until claimant arrived at his home that he decided to remove a hammer from the roof of his house where it had been used in making repairs for his personal benefit, totally disconnected with his employment. He drove to his home in employer’s truck, parked it, went to his garage where he got the stepladder, walked past the truck and around to the front of his house where there was scaffolding used in repairing his house, set and climbed the ladder to reach the scaffolding, took the hammer from the roof and threw it on the ground, started down the ladder, and when it started to slide sideways he-jumped and twisted his ankle. He testified that the ladder was in good condition. His claim under the Workmen’s Compensation Act, F.S.A. § 440.01 et seq. is based on this injury.
The insurance carrier controverted the claim on the ground that the injury did not arise out of and in the course of employment. The Deputy Commissioner held to the contrary and was affirmed by the Full Commission, one of the three members dissenting.
The ratio decidendi of the Deputy Commissioner’s order is that the claimant was “instructed,” rather than “permitted,” to perform the act in the course of which the injury resulted. This conclusion has no predicate whatsoever outside the above quoted and emphasized portion of claimant’s answer to the above quoted question propounded to him. The statement attributed to Hubbard is so indefinite that it is necessary to indulge several inferences in order to justify the conclusion that the words spoken are the equivalent of an *421 “instruction,” as opposed to granting of “permission,” for claimant to engage on a personal mission. The words “put everything in order and come on hack,” for aught that appears to the contrary, might have related to some work of the employer upon which the claimant was engaged and in connection with which the ladder was to have been used. It is upon the strained inference that this language related to claimant’s unfinished business, whatever it might have been, that the Deputy Commissioner found that the claimant was engaged in a “dual purpose” trip within the rule of the Supreme Court in Cook v. Highway Casualty Co., Fla., 82 So.2d 679. In this connection, the Deputy Commissioner observed:
“Here the employer might reasonably expect the claimant to move his tools from where he was using the ladder before putting the ladder into the truck. Also, it is obvious that the claimant was doing just what his employer told him to do when he fell; namely, putting everything in order so that he could take the ladder back to work.”
The order of the Full Commission, however, rejected the “dual mission” theory of the Deputy Commissioner. The ratio de-cidendi of its order is that “the employee was on a single mission for his employer, the mission being to obtain a ladder located on the premises owned by the claimant,” and further:
“It is reasonable and logical that claimant upon reaching his home would use the ladder in order to obtain the hammer left on the roof and that said deviation, if a deviation, is so unsubstantial that it would not be a deviation from claimant’s employment at the moment of injury.”
We are not concerned with what mission the employee might reasonably have embarked upon in connection with his personal problems and affairs, totally unrelated to employer’s business. We are concerned with whether the mission reasonably falls within the scope of employment.
Logic and reason cannot equate the language relied on to the dignity of an instruction, and the proposition that the deviation is “unsubstantial” seems, considering the result, about as sound as the old saw about a woman being a little bit pregnant.
In Foxworth v. Florida Industrial Commission, Fla., 86 So.2d 147, our Supreme Court held that the claimant, who was in the lobby of a public hotel at a meeting connected with his employer’s business and was injured by a fall after taking several steps pursuant to his intention to go on a personal shopping trip, did not suffer injury in the course of his employer’s business. .
Duval Engineering & Contracting Co. v. Johnson, 154 Fla. 9, 16 So.2d 290, was a case in which an employee died as the result of an automobile accident that occurred while he was on his way home from an entertainment given by his employer. The Supreme Court noted that the employee had not assisted in the entertainment, and held that the accident occurred at a time when the employee was engaged in the pursuit of his own private and personal affairs, even though he attended the function with the permission of the employer.
In Travelers Insurance Co. v. Taylor, 147 Fla. 210, 3 So.2d 381, it was held that where a truck driver procures another person to drive his employer’s truck and is killed while riding in his own automobile before reaching the place where he is to rejoin the truck, the death is not compen-sable under the Workmen’s Compensation Act.
There can be no question that the claimant in the case on review was injured at a time before his personal errand was completed. It has heretofore been the rule in Florida and generally that such an injury is not compensable. The reason for this rule is shown in Larson on Workmen’s *422 Compensation Law, Volume I, Section 19.-43, 19.61.
The facts here do not fall within the generally accepted so-called Personal Comfort Doctrine, which holds that work-connected activity goes beyond the direct services performed for the employer and includes at least some ministration to the personal comfort and human wants of the employee. This doctrine is based on the theory that they indirectly benefit the employer. My imagination does not permit me to place claimant’s removal of the hammer from his roof in that category.
Adoption of the philosophy embodied in the order of the Full Commission and approved by the decision of this court slams the door upon those ordinary courtesies, kindnesses and favors which employers so often indulge to their employees by “permitting” them to engage in personal missions during work time at employer’s expense. Without these amenities the relation of employer and employee oftentimes becomes insufferable. In its absence tempers are shortened and a cancer grows upon the sense of loyalty. The imposition of this liability will worsen rather than benefit the employee because as an inevitable consequence the employer will be alerted and compelled to deny the employee permission to perform strictly personal acts during the time he is on the job.
Contrary to the finding of the Deputy Commissioner to the effect that the employer “instructed” the employee to remove the hammer on employer’s time and accepted liability under the Workmen’s Compensation Act for any injury suffered in the course of that mission, I am persuaded that the only reasonable inference and logical deduction that can arise from the transactions testified to in this case is that the employer gave the employee— at most — nothing other than permission to perform the personal mission.
It being my opinion that (1) there is no -ompetent substantial evidence to support the Deputy Commissioner’s findings of fact, and (2), assuming the contrary, that the conclusions of law are erroneous, it follows that I would hold that the employer is not required to respond under the Workmen’s Compensation Act for injuries sustained by this employee in an accident occurring at the height of the personal mission upon which he was engaged.
For the reasons stated, I would have granted certiorari and reversed the order of the Full Commission with appropriate instructions.